Jason J. Thompson (*pro hac vice* forthcoming)
Paulina R. Kennedy (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
pkennedy@sommerspc.com

Jacqueline Mendez Soto, 022597
BARTON MENDEZ SOTO PLLC
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
Telephone: 480-550-5165
jacqueline@bartonmendezsoto.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

**Jason Simon**, individually, and on behalf of others similarly situated,

Plaintiff,

v.

**GoDaddy.com, LLC**,

Defendant.

Case No.:

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Hon.:

Plaintiff, Jason Simon ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, GoDaddy.com, LLC ("Defendant" or "GoDaddy"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2. According to its website, Defendant "[has] real people (GoDaddy Guides) whose humanity shines through 24/7, whether they're helping you take the first step or the next step."[1] "GoDaddy is the world's largest services platform for entrepreneurs around the globe." *Id*. Defendant's business services reach over 20 million customers globally, in furtherance of "giving them all the help and tools they need to grow online." *Id.*

3. Upon information and belief, in providing the aforementioned services, Defendant employed hourly sales representatives working in its brick-and-mortar locations in Arizona, California, Iowa, Massachusetts, Virginia, and Washington, as well as working remotely in Florida, Georgia, North Carolina, and Texas.

4. Defendant used a number of titles for its sales representatives including, but not limited to, Care Agent, Inside Sales Representative, and Outbound Sales Representative (collectively referred to herein as "Agents").

5. Defendant classified its Agents as non-exempt and tasked them with the

---

[1] *See* https://aboutus.godaddy.net/about-us/overview/default.aspx last visited January 5, 2024).

primary job duty of providing over-the-phone sales and customer services.

6. Defendant employed Plaintiff Simon as an hourly remote call center employee with the job title of Care Agent.

7. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly Agents, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

8. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

10. Defendant violated the FLSA and common law by systematically failing to compensate its Agents for work tasks completed before and after their scheduled shifts

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited January 5, 2024).

when they were not logged into Defendant's timekeeping system, which resulted in Agents not being paid for all overtime hours worked and regular hours in non-overtime workweeks.

11. More specifically, Defendant failed to compensate Agents for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

12. Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding his unpaid wages including unpaid overtime for all hours worked exceeding forty (40) in a workweek, liquidated damages, attorneys' fees, and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

13. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

**JURISDICTION AND VENUE**

14. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

15. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

16. Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's Agents engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

17. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in this District and Defendant conducts business in this District.

## PARTIES

19. Plaintiff Jason Simon is a resident of Tyler, Texas and worked for Defendant remotely from approximately December 2020 to June 2021. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $17.00 per hour. Plaintiff Simon signed a consent to join this collective action, which is attached as **Exhibit A**.

20. Additional Opt-In Plaintiffs were or are employed by Defendant as Agents

during the past three years and their consent forms will also be filed in this case.

21. Defendant GoDaddy is a Delaware corporation headquartered in Tempe, Arizona.

**GENERAL ALLEGATIONS**

22. Prior to hiring prospective Agents, Defendant provided them with a written offer setting forth the job requirements and hourly rate of pay.

23. Defendant maintained documents demonstrating the promised hourly wage for each Agent including, but not limited to: offer letters, paystubs, and/or payroll records.

24. Plaintiff received an offer from Defendant to work as an Agent, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

25. Plaintiff performed under the agreement with Defendant by carrying out his job duties and responsibilities. More specifically, Plaintiff acted as a point of contact for existing and potential customers, providing customer service. To provide the aforementioned customer service, Plaintiff utilized Defendant's applications and systems to analyze customer accounts and consult on new product and service recommendations. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

26. Defendant's Agents, including Plaintiff, typically worked five days each week and up to, and often more than, forty (40) hours per week.

27. Defendant provided training to hourly call center employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log

into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call-quality expectations, and Defendant's policies. The training that Defendant provided to all of its Agents was substantially, if not entirely, the same.

28.     At all relevant times, Defendant controlled Plaintiff's and all other Agents' work schedules, duties, protocols, applications, and assignments.

29.     Defendant required Plaintiff and all other Agents to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

30.     Defendant instructed Plaintiff and other similarly situated Agents to be "call ready" the moment their scheduled shifts started but prohibited them from clocking in before the start of their scheduled shifts. This required Defendant's Agents to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendant's Agents sometimes experienced technical difficulties, which increased the amount of off-the-clock work they performed that shift.

31.     Defendant routinely evaluated, and at times disciplined, Agents based on schedule adherence and call quality metrics, including, but not limited to, the amount of time an Agent was clocked in but unavailable to take calls.

32.     Defendant enforced these policies through its uniform compensation,

attendance, and adherence procedures and the call-quality assurance system it used to monitor and grade Agents' calls.

33. Defendant's Agents used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agents' work and Agents could not perform their jobs without them.

34. Similarly, Defendant trained and instructed its Agents to clock out the moment they finished fielding their last call for the shift. This pressured and required Defendant's Agents, including Plaintiff, to also perform off-the-clock work after their scheduled shifts when they logged out of the programs and applications that they utilized during their shifts and shutdown or restarted their computer.

35. The pre-, mid-, and post-shift off-the-clock time Plaintiff and Defendant's Agents spent booting-up/logging into and shutting down their computer, applications and programs directly benefitted Defendant and was integral and indispensable to the Agents' job responsibilities.

36. As a result of the off-the-clock work described herein, Plaintiff and other Agents were unlawfully deprived of *at least* thirty (30) to forty-five (45) minutes of compensation every shift.

37. At all relevant times, Defendant was able to track the amount of time Plaintiff and other Agents spent in connection with the off-the-clock activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they

performed, thus breaching its agreements with Plaintiff and its Agents to pay them a base hourly rate for all hours worked.

38. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

39. Despite knowing Plaintiff and all other Agents performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

40. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated Agents booted-up and logged into their computer each shift, along with their clock-in/out times in the timekeeping system.

41. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and other Agents experienced technical issues.

42. Because Defendant required its Agents, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, and prohibited them from recording all work time, including overtime hours, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time the employees spent working for Defendant. Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they actually worked.

### A. Pre-Shift Off-the-Clock Work

43.    The off-the-clock pre-shift process took substantial time, amount to *at least* fifteen (15) to twenty (20) minutes per shift. Specifically, before each shift, Agents were required to undertake the following essential work tasks:

    a.   Turn on their computer;

    b.   Log into Microsoft Windows using a username and password;

    c.   Connect to Defendant's VPN using a username, password and dual authentication process via the Octo app on personal cell phone;

    d.   Log into Microsoft Windows on virtual desktop using a username and password;

    e.   Connect and log into Defendant's various applications for security;

    f.   Log into Microsoft Teams using a username and password;

    g.   Log into a second instant messaging programing with a username and password;

    h.   Open Microsoft Outlook, Defendant's application for receiving emails related to their job, viewing calendar for team meetings he had to attend and other information;

    i.   Open Defendant's application for receiving caller information (Five9);

    j.   Access and log into client resource management program with username and password;

    k.   Set up and prepare their headphones for incoming calls;

l.   Log into Defendant's timekeeping system through which Defendant's Agents would monitor their lunch/break times; and

m.   Go into a "ready" status at the start of the scheduled shift and clock in.

44.   Defendant's employees had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the Agents had to arrive to begin working *at least* fifteen (15) to twenty (20) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

45.   Defendant's Agents were not compensated for all of this time because Defendant prohibited them from clocking in before the start of their scheduled shifts.

46.   The pre-shift off-the-clock work Agents performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities.

**B.   Mid-Shift Off-the-Clock Work**

47.   Defendant provided its Agents with a 30-minute unpaid meal period during each work shift.

48.   However, Agents were encouraged and incentivized not to take their meal period break as there would be an attendance and availability bonus at the end of each month.

49.   Defendant also required its Agents to perform off-the-clock work during these unpaid meal periods, including returning from the 30-minute meal period approximately 5 minutes early in order to have enough time to log back in prior to resuming their shifts. This process was similar to the pre-shift login process described

above (albeit abbreviated), and this time also went unpaid.

50. The mid-shift off-the-clock time worked by Defendant's Agents directly benefitted Defendant and the process was an integral and indispensable part of the Agents' job responsibilities.

51. Because Defendant's Agents typically worked scheduled shifts of at least 40 hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

52. Defendant had express and constructive knowledge that its Agents took unpaid meal periods and that its Agents also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and clocked in on time for their shifts to resume.

53. Despite having express and constructive knowledge of its Agents' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

**C. <u>Post-Shift Off-the-Clock Work</u>**

54. Pursuant to Defendant's policies, training and direction, Plaintiff and similarly situated Agents were required to clock out the moment they were done fielding their last call for the day and *before* closing all work applications and systems they used during their shift and shutting down or restarting their computer. Plaintiff and other Agents were not allowed to begin the logout and shutdown process until they completed their last fielded call.

55. This resulted in plaintiff and other Agents performing *at least* an additional fifteen (15) to twenty (20) minutes every shift.

56. The post-shift off-the-clock work Plaintiff and other Agents performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

**COLLECTIVE ACTION ALLEGATIONS**

57. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly call center employees who worked for Defendants at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

58. Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

59. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

60. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when

considering the uncompensated off-the-clock work discussed herein.

61. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

62. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

63. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members for all regular hours they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective members, worked for the benefit of

Defendant.

64. Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

65. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

66. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work without compensation due to uncompensated boot-up and shut-down time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

67. Plaintiff estimates the FLSA Collective, including both current and former Hourly Employees over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendants' personnel and payroll records.

68. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

69. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly call center employees who worked for Defendants during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

70. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds (if not thousands) of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

71. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

c. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

d. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants

72.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

73.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23

Nationwide Class.

74. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

75. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

76. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

77. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME**

78. Plaintiff re-alleges and incorporates all previous paragraphs herein.

79. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

80. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

81. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

82. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

83. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

84. Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

85. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

86.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

87.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

88.     The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

89.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

90.     As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in

violation of the FLSA.

91. Defendant's violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

92. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

93. Plaintiff re-alleges and incorporates all previous paragraphs herein.

94. At all times relevant to this action, Defendant has a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

95. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

96.     For example, Defendants offered to compensate Plaintiff at a minimum of $17.00 per hour if he agreed to perform services for Defendants as an Hourly Employee. Plaintiff accepted Defendants' offer and performed duties as Hourly Employees in reliance on the offer.

97.     Defendants breached their contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

98.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $17.00 per hour within the applicable period.

99.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

100.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

101.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with

Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

102.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

103.    Defendants also breached their duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

104.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

105.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

106.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

107.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

108.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

109.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

110.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

111.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

112.    Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

113.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

114.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

115.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to

Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

116. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

d.  An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e.  An Order declaring Defendant violated the FLSA;

f.  An Order declaring Defendant's violations of the FLSA were willful;

g.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants was unjustly enriched) by failing to pay them for mandatory pre, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.  An Order awarding such other and further relief as this Court deems appropriate.

DATED this 10th of January 2024.

Respectfully Submitted,

/s/ [signature]

Jacqueline Mendez Soto, 022597
**BARTON MENDEZ SOTO PLLC**
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
Jacqueline@bartonmendezsoto.com

Jason J. Thompson (*pro hac vice* forthcoming)
Paulina R. Kennedy (*pro hac vice* forthcoming)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

**JURY DEMAND**

Plaintiff, Jason Simon, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

DATED this 10th of January 2024.

Respectfully Submitted,

/s/ ______________________

Jacqueline Mendez Soto, 022597
**BARTON MENDEZ SOTO PLLC**
401 W. Baseline Road, Suite 205
Tempe, Arizona 85283
480-550-5165
Jacqueline@bartonmendezsoto.com

Jason J. Thompson (*pro hac vice* forthcoming)
Paulina R. Kennedy (*pro hac vice* forthcoming)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

# EXHIBIT A

**CONSENT TO JOIN**

1. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in this lawsuit.

2. I worked for Defendant(s) as an hourly employee and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel will petition the Court for an award of attorneys' fees from any settlement or judgment.

3. I hereby designate the firms of Sommers Schwartz, P.C. to represent me in this lawsuit.

Signature:______________________________________________

Print Name: Jason Simon

Date Signed: 01/04/2024